DPL

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| LATELLE J. BARTON, JR., | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:15-cv-4149 |
| v. | ) | |
| | ) | Hon. Charles R. Norgle |
| UNISERV CORP., et al., | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Latelle J. Barton, Jr. ("Plaintiff") was hired in 2014 to teach three classes at the Caribbean Medical University ("CMU") on the Island of Curacao in the Dutch Antilles. After his employment with CMU ended, Plaintiff sued Defendants Uniserv Corp. ("Uniserv"), CMU, and Radoslaw Lewkowski ("Lewkowski") (collectively, "Defendants") alleging various forms of employment discrimination. Before the Court is Defendants' second motion for summary judgment, limited to the narrow issue of whether the Age Discrimination in Employment Act (the "ADEA") is applicable in this case. For the following reasons, the motion is granted.

## BACKGROUND

The Court's August 30, 2016 Opinion provided a factual background of this case. What follows is a brief summary of the facts and procedure necessary to understand the instant motion.

On January 6, 2014, Plaintiff was hired by CMU as a Professor. He was hired to teach three separate courses at the school's campus on the Island of Curacao, Dutch Antilles. By May 2015, Plaintiff's contract had lapsed and was not renewed.

CMU is a private, limited liability company organized under the laws of, and operating on, the Island of Curacao, the Dutch Antilles. Radeslaw Lewkowski is the Chief Executive

Officer of CMU and the President of UniServ Corporation. UniServ is an Illinois Corporation and is registered with the Illinois Secretary of State to do business under the assumed name "Caribbean Medical University"—a moniker under which it provides financial and administrative support to the foreign entity in the United States.

Plaintiff filed a *pro se* Complaint on May 11, 2015. On November 30, 2015, Plaintiff's attorney filed an appearance and on January 8, 2016, filed his First Amended Complaint. Following a partial judgment on the pleadings, Plaintiff filed his Second Amended Complaint on September, 30, 2016. On September 19, 2017, the Court denied Defendants' motion for summary judgment, but on February 8, 2018, the Court permitted Defendants to file a second motion for summary judgment to determine whether the ADEA is applicable in this case.

## ANALYSIS

### Summary Judgment Standard

"Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." Dunderdale v. United Airlines, Inc., 807 F.3d 849, 853 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). The Court views the evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. Id. The Court does not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." Stokes v. Bd. of Educ. of the City of Chi., 599 F.3d 617, 619 (7th Cir. 2010).

But before the nonmoving party "can benefit from a favorable view of evidence, he must first actually place evidence before the courts." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted); see also Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Local Rule 56.1(a)(3) requires a motion for summary judgment be accompanied by "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law[.]" Each of these statements "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." See id. "[The] court is not required to 'scour the record in search of evidence to defeat a motion for summary judgment.'" Ritchie v. Glidden Co., 242 F.3d 713, 723 (7th Cir. 2001) (quoting Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir.1996)).

**Age Discrimination in Employment Act**

The Age Discrimination in Employment Act states: "It shall be unlawful for an employer—to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). However, the ADEA's protections "shall not apply where the employer is a foreign person not controlled by an

American employer." Id. at § 623(h)(2). Further, for the ADEA's protections to apply, and a plaintiff to have a right to relief under the ADEA, the employer must employ "twenty or more employees." 29 U.S.C. § 630; Clark v. Law Office of Terrence Kennedy, Jr., 709 F. App'x 826, 829 (7th Cir. 2017) ("It is true that the ADEA applies only to employers with 20 or more employees."); Bridge v. New Holland Logansport, Inc., 815 F.3d 356, 360 (7th Cir. 2016).

Defendants' argue that UniServ does not fall under the reach of the ADEA because at no time during the relevant period did it employ more than three individuals, nor has it ever. In support of this assertion they cite to the affidavit of Mr. Lewkowski who avers as much. However, Plaintiff argues that a single employer relationship exists between UniServ and CMU. In support of his motion, Plaintiff argues that the four prong test articulated in Radio & Television Broadcast Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc. is applicable here. 380 U.S. 255 (1965). Indeed this standard is articulated in the Statute itself.

Whether an American employer controls a foreign entity is based on "(A) interrelation of operations, (B) common management, (C) centralized control of labor relations, and (D) common ownership or financial control, of the employer and the corporation." 29 U.S.C. § 623(h)(3).[1] "Although the presence or absence of any one factor is not controlling, in light of the ADEA's goal of remedying and eliminating age discrimination in the workplace, 'control over the elements of labor relations is a central concern.'" Rogers v. Sugar Tree Prod., Inc., 7 F.3d 577, 582 (7th Cir. 1993) (quoting Armbruster v. Quinn, 711 F.2d 1332, 1337 (6th Cir.1983)).

*Interrelation of Operations and Common Management*

[1] While the Court has abandoned this test for the purpose of extending ADEA liability to an independent domestic entity, see Papa v. Katy Industries, Inc., 166 F.3d 937, 940-42 (7th Cir.1999), abrogating Rogers v. Sugar Tree Prod., Inc., 7 F.3d 577 (7th Cir. 1993), the preexisting case law is informative because the Statute still requires the Court to consider the four factor test when analyzing the relationship between domestic and foreign entities.

Interrelation of operations and common management are two factors that strongly influence the single employer inquiry. Sugar Tree, 7 F.3d at 583. Here, CMU and UniServ are two distinct entities, one is a medical school organized under the laws of the Dutch Antillies and the other is a corporation incorporated under the law of the State of Illinois. Pl.'s Resp. to Defs.' Statement of Material Facts [hereinafter, "Pl.'s Resp."], pp. 2, 5. Mr. Lewkowski is the Chief Executive Officer of CMU, Id. at p. 11 ¶ 3, and is the sole officer of UniServ. Id. at 13. "[T]he fact two corporations share the same owner does not, in and of itself, tend to show that one of these corporations controls the personnel decisions of the other." Sugar Tree, 7 F.3d at 583.

There is no evidence before the Court that shows that UniServ and CMU shared any additional employees. Moreover, there is no evidence that Mr. Lewkowski was responsible for any personnel decisions beyond salary negotiations with Plaintiff. Plaintiff states that his relationship with CMU staff was deteriorating and that he sent several e-mails to Mr. Lewkowski complaining about his workplace relationships. Pl.'s Resp. ¶¶ 9, 11, 12. Plaintiff then states: "[o]n or about February 6, 2015, Plaintiff was notified he would be not be rehired. (See Exhibit A at 59, 76, 93)[.]" Id. at ¶ 12. However, this factual statement does not establish that Mr. Lewkowski chose to let his contract expire, nor does it state that Mr. Lewkowski informed him of said decision. An investigation of the record referenced, which was mis-identified in Plaintiff's 56.1 Statements, shows that the letter declining to renew Plaintiff's contract was sent and signed by Ryan Jackson, M.D., M.S., Dean of Academics at CMU.

The only reasonable inference the Court can draw from the facts presented is that Mr. Lewkowski functioned as a member of CMU's management staff. The e-mails from Plaintiff to Mr. Lewkowski are in reference to personnel disputes with other members of CMU's management—the types of e-mails typically sent to Human Resources—or pay disputes. There

is nothing in the record to support the assertion that UniServ and CMU shared management operations. Instead Plaintiff avers that the Defendants' 56.1 Statements are inappropriate. The Court disagrees. These are the types of vague, metaphysical doubts that will not defeat a motion for summary judgment.

*Centralized Control Of Labor Relations*

Centralized control of labor relations is considered heavily in the context of ADEA claims because employers cannot be allowed to dodge anti-discrimination requirements by structuring their entities in such a way. See New Holland Logansport, 815 F.3d 356. Here, there is significant overlap of UniServ's labor force and control thereof, but this overlap is not mutual. Because UniServ is composed of, typically, a single employee—Mr. Lewkowski—he exercises complete control over UniServ's workforce.

However, CMU employs a number of doctors, administrators, and support staff. Mr. Lewkowski's, and by extension UniServ's, control over these employees is limited. While Mr. Lewkowski has final authority over personnel decisions, Pl.'s Resp. p. 2, preliminary decisions about "hiring, firing, and discipline of CMU employees" are made by Ryan Jackson. Defendants Uniserv Corp. and Caribbean Medical University's Statement of Material Facts [hereinafter, "Defs. SoMF"], Ex. B ¶ 4. The evidence before the Court supports Defendants' position that disciplinary decisions are made by Mr. Jackson, CMU's Dean of Academics. Id. at ¶¶ 25, 26, 31, 33. In Plaintiff's 56.1 Statements, he makes no suggestion that Mr. Lewkowski was involved in his oversight or discipline. Pl.'s Resp., Ex. B pp. 2, 3, 12, 14, 17, 42, 98-99. Despite drawing all inferences in Plaintiff's favor, there is no evidence that would allow a reasonable jury to conclude that Mr. Lewkowski, and by extension UniServ, was in charge of CMU's staff.

*Common Ownership or Financial Control*

While neither of the aforementioned factors weight in favor of a finding that CMU falls under the umbrella of the ADEA, there is common ownership and financial control of both CMU and UniServ. Defendants admit that Mr. Lewkowski is the Chief Executive Officer of CMU and the President of UniServ Corporation. Defs. SoMF, ¶ 1. The record is replete with evidence showing that Mr. Lewkowski was in charge of both entities' finances and frequently used UniServ to service various CMU financial obligations.

However, to determine whether an American employer controls a foreign corporation, the four statutory factors must be considered in totality with an eye towards the "goal of remedying and eliminating age discrimination in the workplace[.]'" Sugar Tree, 7 F.3d at 582. Here, three of the factors: interrelation of operations, common management, and centralized control of labor relations weigh heavily in favor of Defendants. In each of the above, Defendant CMU is shown to be an independent entity that, while closely related to UniServ, is not controlled by it. While the common ownership or financial control does weigh in favor of Plaintiff's position, the court must consider the factors as a whole and the totality of the evidence presented.

Because, the Court finds that UniServ does not control CMU, it does not consider whether CMU's employees may be added to UniServ's to satisfy the statutory minimum. Accordingly, the Court finds as a matter of law that the Age Discrimination in Employment Act does not apply to Caribbean Medical University because it is a foreign entity not controlled by a United States company.

**State Law Claims**

Plaintiff also brings a state law claim for breach of contract. However, because the Court has determined that the ADEA does not apply to CMU it lacks jurisdiction to address the breach of contract claim. Accordingly, the remaining state law claim is dismissed.

## CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of Defendants. The Age Discrimination in Employment Act is not applicable in this case and therefore the Court lacks subject matter jurisdiction.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: June 22, 2018